**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CATHY C. CARDILLO, | Civil Action No. 16-2347 (FLW)(LHG) |
| Plaintiff, | **OPINION** |
| v. | |
| CLERK, SUPREME COURT OF NEW JERSEY et al., | |
| Defendants. | |

**WOLFSON, United States District Judge**:

Before the Court is the Amended Complaint of Plaintiff Cathy C. Cardillo, alleging, under 42 U.S.C. § 1983, that Defendants Mark Neary, the Clerk of the Supreme Court of New Jersey; Bonnie C. Frost, Esq., the Chair of the Disciplinary Review Board of the Supreme Court of New Jersey; Charles Centinaro, the Director of the New Jersey Office of Attorney Ethics; Marvin Walden, Jr., Esq., the Secretary of New Jersey's District VI Fee Arbitration Committee; and Aurelio Vincitore, Esq., the District VI Fee Arbitrator (collectively, "Defendants"); in their individual capacities, violated Plaintiff's procedural due process right to adequate notice of the fee arbitration proceedings against her. Plaintiff also names her former client, Megan Burns, as a defendant, alleging that she has an "[i]nterest in this matter." The Court finds that subject matter jurisdiction is lacking, pursuant to the *Rooker-Feldman* doctrine, and the Amended Complaint is therefore dismissed.

I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff filed the original Complaint in this matter on April 21, 2016, seeking relief under 42 U.S.C. § 1983 from an alleged deprivation of her constitutional due process rights in

1

proceedings occurring as part of New Jersey's statutory Fee Arbitration System ("FAS"). The original Complaint named as defendants several New Jersey state government agencies and officers of those agencies acting in their official capacities. On July 22, 2016, therefore, those defendants moved to dismiss the Complaint for lack of jurisdiction on the grounds of Eleventh Amendment immunity. Plaintiff cross-moved for leave to amend to name the state-officer defendants in their individual capacities and to remove the state-agency defendants. The Magistrate Judge granted Plaintiff leave to amend on November 18, 2016. Plaintiff filed an Amended Complaint on November 30, 2016.

In her Amended Complaint, Plaintiff alleges that she is a retired attorney, now resident in Portugal, who previously lived and practiced law in the State of New Jersey. Amended Complaint, ¶ 1-2. At some point after Plaintiff retired from the practice of law and relocated to Portugal, a former client of Plaintiff, Defendant Megan Burns, submitted a claim with New Jersey's District VI[1] Fee Arbitration Committee (the "Committee"), contesting Plaintiff's attorney fee for a past representation. *Id.* at ¶ 4. The Committee attempted to serve Plaintiff with notice of a hearing concerning the dispute by certified mail to Plaintiff's former New Jersey address. *Ibid.* Because Plaintiff no longer resided at her New Jersey address, the certified mailings were returned to the Committee as undeliverable. *Ibid.* The dispute initiated by Plaintiff's former client proceeded before the Committee without Plaintiff's participation, and the Committee entered a decision adverse to Plaintiff. *Ibid.* When Plaintiff became aware of the Committee's adverse decision, she sent an e-mail to the Office of Attorney Ethics, which oversees the fee arbitration committees, seeking to reopen the fee arbitration proceeding on the

---

[1] The Amended Complaint at some points refers to the "District IV" Arbitration Committee, but records for the proceeding provided to the Court make clear that this is a typographical error, and that the proceedings which are the subject of the Amended Complaint occurred in District VI.

2

grounds that she did not receive adequate notice. *Id.* at ¶ 4. Defendant Charles Centinaro, the acting Director of the Office of Attorney Ethics ("OAE"), denied Plaintiff's request to reopen in a response e-mail. *Ibid.* Plaintiff appealed the Committee's decision and the OAE's refusal to reopen the matter to the Disciplinary Review Board ("DRB"), again alleging that she had not received notice, and that the Committee was aware that she had not received notice, and arguing that proceedings should therefore be reopened. *Ibid.* The DRB summarily denied Plaintiff's appeal in a letter decision. *Ibid.* Under New Jersey Supreme Court rules, there is no further appeal from the DRB. *Ibid.* Plaintiff nevertheless filed a notice and Petition for Review ("Petition") with the New Jersey Supreme Court, seeking to overturn the DRB's decision. On April 4, 2016, Defendant Mark Neary, the Clerk of the Supreme Court, informed Plaintiff by letter that her Petition would not be considered, pursuant to the Court's rules. *Ibid.* In her Amended Complaint, Plaintiff asks this Court, *inter alia*, "to reverse the decisions of the named State Actors [—identified in Am. Compl., ¶ 3, as the Clerk of the Supreme Court of New Jersey, the Chair of the DRB, the Director of the OAE, the Secretary of the Committee, and the Fee Arbitrator of the Committee—] and to permit [Plaintiff's] participation in a new to be noticed District [VI] Fee Arbitration Hearing." *Id.* at ¶ 6.

On March 6, 2017, Plaintiff moved for summary judgment. On March 7, 2017, Defendants again moved to dismiss. While these motions were being briefed, this matter was reassigned to me. Although Defendants' motion to dismiss was styled both as a motion challenging this Court's jurisdiction under Fed. R. Civ. P. 12(b)(1) and as a motion challenging the adequacy of Plaintiff's pleadings under Rule 12(b)(6), the Court's review of the arguments

3

revealed that Defendants' bases for dismissal were fundamentally non-jurisdictional in nature.[2] Although Defendants failed to raise any true jurisdictional challenges in their motion to dismiss, I, mindful of my independent obligation to ensure the Court's jurisdiction, administratively terminated the parties' motions by letter order on October 27, 2017, and directed the parties to brief the question of this Court's jurisdiction over the claims in the Amended Complaint. Specifically, none of the parties had discussed whether the *Rooker-Feldman* doctrine was implicated by Plaintiff's explicit request in the prayer for relief of her Amended Complaint that this Court reverse a final decision issued through New Jersey's statutorily-established FAS. The parties submitted supplementary briefing and exhibits to the Court, and that issue, raised *sua sponte*, is now before me.

II. STANDARD OF REVIEW

As a federal court of limited jurisdiction, this Court has a continuing obligation to determine whether it possesses subject matter jurisdiction over the cases before it. *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 420 (3d Cir. 2003). This includes raising all issues affecting jurisdiction, including the *Rooker-Feldman* doctrine, *sua sponte*. *Ibid.*[3] "The *Rooker–*

---

[2] Although characterized as a motion under R. 12(b)(1), Defendants' argument in briefing was that "Plaintiff's Amended Complaint does not assert a violation of a constitutional or federally protected right." ECF No. 34-3, p. 6. This argument did not implicate the Court's subject matter jurisdiction and was fundamentally coextensive with Defendants' motion under R. 12(b)(6) that the Amended Complaint failed to state a claim for a violation of plaintiff's federal, procedural due process rights. *Id.* at 10-11.

[3] The Court notes that, although Defendants have a pending motion to dismiss Plaintiff's claims on potentially meritorious grounds, the Court may not proceed to Defendants' non-jurisdictionally-based arguments before finding there is subject matter jurisdiction over this case. "The United States Supreme Court has explained that 'a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction.'" *Bolick v. Sacavage*, 617 F. App'x 175, 177 (3d Cir. 2015) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,* 549 U.S. 422, 430–31 (2007)). And "[t]he Rooker-Feldman doctrine. . . [is] jurisdictional in nature." *Id.* at 177 (citing *Taliaferro v. Darby Twp. Zoning Bd.,* 458 F.3d 181, 192 (3d Cir. 2006)).

4

*Feldman* doctrine strips federal courts of jurisdiction over controversies 'that are essentially appeals from state-court judgments.'" *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 165 (3d Cir. 2010)). Specifically, it bars from federal consideration "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). The *Rooker–Feldman* doctrine is properly invoked when the following four factors are satisfied: "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining,* 615 F.3d at 166 (quotations omitted, alterations in original).

III. ANALYSIS

In this matter, Plaintiff clearly complains of injuries caused by an adverse state decision rendered before her suit was filed and seeks to have this Court review and reject that decision. Specifically, Plaintiff had an adverse decision entered against her by the Committee after a fee arbitration proceeding in which she did not take part. Plaintiff then sought to have the OAE reopen the fee arbitration proceeding on the grounds that her procedural right to notice of the proceeding had been violated. The OAE rejected Plaintiff's request and invited her to appeal its decision on the notice issue to the DRB. Plaintiff appealed the notice ruling to the DRB and lost; the DRB found that the record did not support the finding of a procedural violation. She now seeks to have this Court reverse the DRB's ruling that her right to notice was not violated.

5

The procedure governing New Jersey's FAS is set forth in New Jersey Supreme Court Rule 1:20A. The Rule provides that fee disputes between attorneys and their former clients, may, at the client's election, be tried to a panel of arbitrators drawn from the fee committee of the district in which the dispute is filed. R. 1:20A-3(b)(1). "A fee arbitration determination is final and binding upon the parties[,]" with no right of appeal on the merits, and only a limited right to appeal procedural deprivations during the committee proceedings. R. 1:20A-2(a). As originally constituted, the FAS provided no right of appeal whatsoever. In the seminal case of *Application of LiVolsi*, 85 N.J. 576 (1981), however, the New Jersey Supreme Court recognized certain limited circumstances in which an appeal of procedural deprivations during the committee proceedings should be permitted, and recommended a rule amendment to designate the DRB as the appellate body to hear such challenges. The appellant attorney in *LiVolsi* claimed that the absence of appeals from fee arbitration committee decisions in the FAS was a deprivation of the attorney's constitutional rights. The New Jersey Supreme Court rejected this argument, noting that "[t]he fact that Committee determinations are not appealable does not, of course, mean that the parties to a Committee adjudication have no recourse if the Committee violates their constitutional rights. If, for example, in reaching a decision, the Committee violates a party's constitutional rights by discriminating against a party on account of race, a collateral attack against the Committee, in either state or federal court, is always possible." *Id.* at 591 n. 15. Accordingly, even though the FAS as then constituted, disallowed appeals of any kind, parties to the arbitration proceedings, who felt their constitutional rights had been compromised by some deprivation of due process still had a venue to vindicate those rights. Prospectively, the New Jersey Supreme Court determined that while the bar on merits appeals should remain in place,

the FAS should be restructured to permit appeals of procedural violations in the committee proceedings *within the administrative system itself*. The court held:

> In barring appeals on the merits, however, we do recognize that both lawyers and clients may need a limited right of appeal in order to protect them from any egregious procedural deprivation before a Committee. We are, therefore, requesting the Civil Practice Committee, after soliciting the views of all interested parties, to recommend an amendment granting a limited right of appeal to the Disciplinary Review Board (DRB). That right should be limited to the following or similar grounds: that a Committee member failed to disqualify himself or herself in a case where he or she would appear evidently partial toward one of the parties; that the Committee failed substantially to comply with the procedural requirements of R.1:20A, e.g., by denying a party the right to subpoena witnesses; or that there was actual fraud on the part of one or more Committee members.

*Id.* at 603–04. The Civil Practice Committee followed the Court's instructions, and R. 1:20A-3(c) now codifies the grounds for appeal from fee arbitration committee judgments. "Under subsection (c) there is generally *no* appeal on the merits from the determination of a Fee Committee. An appeal may be taken by the client or the attorney to the DRB on four grounds: (1) failure of a member to disqualify per *R.* 1:12-1, (2) failure to comply with the procedural requirements of *R.* 1:20A, (3) actual fraud by a member of the committee, and (4) palpable mistake of law by the committee." *Linker v. Co. Car Corp.*, 281 N.J. Super. 579, 586, 658 A.2d 1321, 1324 (App. Div. 1995). Since the promulgation of R. 1:20A-3(c), and amendments to R. 1:20A-2(a) in 1995, it has been clear under New Jersey law that the Supreme Court's jurisdictional grant of authority to the DRB to hear these procedural challenges to fee arbitration committee proceedings is exclusive. R. 1:20A-2(a) reads "[a] fee arbitration determination is final and binding upon the parties except as provided by R. 1:20A-3(c)." The comment to the revised rule 1:20A-2 provides:

> *R.* 1:20A-2 has been rewritten for clarity. . . . [T]he rule now makes clear that the decision of the fee arbitration committee is final and binding on the parties, and that, pursuant to *R.* 1:20A-3(c), the Board, alone, has appellate jurisdiction in these matters.
> . . .

> For example, in the matter of *Paul Linker et al. v. The Car Corp.,* Sup. Court Law Div. Essex Co. Docket No. L-8394-94, decided Aug. 15, 1994, the attorney filed a summary action pursuant *R.* 4:67 to reduce a fee determination to judgment. The client, who elected not to appeal the fee arbitration determination to the Disciplinary Review Board, *raised its procedural defenses* for the first time in the Superior Court enforcement action. The trial court permitted said collateral attack and remanded the matter back to the fee arbitration panel to conduct a new hearing. *Such collateral challenges to fee determinations would be prohibited by the rule change.*

*Linker*, 281 N.J. Super. at 587 (App. Div. 1995) (quoting R. 1:20A-2 cmt. to 1995 am.) (emphasis added). The client-plaintiff in *Linker* had successfully sought in the Law Division of the New Jersey Superior Court to challenge his deprivation by a fee arbitration committee of his right to compel witnesses to testify by subpoena. The Superior Court therefore ordered that the client's fee arbitration proceeding be reopened to permit the subpoenaing of witnesses. The Appellate Division, considering the New Jersey Supreme Court's amendment of *R.* 1:20A-2, and the accompanying comments, found that "[t]he Law Division judge had no power to review the panel's award *in any respect* under th[e revised] administrative scheme." *Linker*, 281 N.J. Super. at 588 (emphasis added). Accordingly, after the 1995 amendments to *R.* 1:20A-2, it is clear that under New Jersey law collateral attacks on fee arbitration committee decisions on the procedural bases set forth in R. 1:20A-3(c) are in the exclusive province of the DRB.

As the final rule reform to implement its decision in *LiVolsi*, the New Jersey Supreme Court promulgated R. 1:20-16(d), which states that "[t]he [DRB's] decision shall be final and not subject to further review by the Court, whether by appeal by leave or in any other manner, in all matters considered by the Board pursuant to R. 1:20-15(e)(1)(i) and R. 1:20A-3(c)." R. 1:20-16(d). Accordingly, not only is the DRB the exclusive forum in which a party to a fee arbitration proceeding can bring a procedural challenge under R. 1:20A-3(c), the DRB's decision on such procedural challenges is final by rule of New Jersey's highest court.

In the matter now before the Court, Plaintiff purports to bring a collateral attack on the Committee's and OAE's refusal to reopen her fee arbitration proceeding on the basis of the same procedural violation she raised in her appeal to the DRB, pursuant to R. 1:20A-3(c). In her appeal to the DRB, Plaintiff argued under R. 1:20A-3(c)(2) that the Committee "failed to substantially comply with the procedural requirements of R. 1:20A." [ECF No. 51, p. 89] (Notice of Appeal to the Supreme Court of New Jersey Disciplinary Review Board from a District Fee Arbitration Committee Determination). Specifically, R. 1:20A-3(b)(2), provides that "[a]ll service on attorneys required by fee arbitration rules shall be made in accordance with Rule 1:20-7(h), except that service by mail may be made by regular mail, unless the letter will result in barring an attorney from further participation or unless the attorney updates an address as stated above in which event service will be made at that address." R. 1:20A-3(b)(2). Rule 1:20-7(h), in turn, provides that "[s]ervice on the respondent of any pleading, motion, or other document required by these rules to be served in a disciplinary or disability proceeding may be made by personal service, or by certified mail (return receipt requested) and regular mail, at the address listed in the New Jersey Lawyers' Diary and Manual or the address shown on the records of the Lawyers' Fund for Client Protection. Service on a respondent may also be made by serving respondent's counsel, if any, by regular mail or by facsimile transmission." R. 1:20-7(h). Plaintiff argued that she had attempted to update her address with the Lawyers' Fund for Client Protection and did not discover that her submission had been lost in the mail or misfiled until after a decision was entered against her in the fee arbitration proceeding. [ECF No. 51, p. 94]. Plaintiff also argued that her mail could not have been forwarded to a foreign address, that her former clients had up-to-date contact information with which to reach her, and that she never in fact received notice of the hearing before the Committee, depriving her of the ability to

9

participate and to dispute critical facts. *Ibid.* The record reflects that Plaintiff's failure to file a responsive pleading with the Committee resulted in her being barred from participation in her hearing, regardless of whether she received notice. [ECF No. 33, p. 31] ("at the time the file was received by the Panel, it was noted that the Appellant attorney was barred from the proceedings. . . . The Panel was not aware that the attorney may not have received notice of the Fee Arbitration, which may have led to the attorney being barred for failure to respond in accordance with the Rules of Court."); R. 1:20A-3(b)(2) ("If the attorney fails to timely file an attorney fee response, the secretary shall inform the attorney that unless an attorney fee response is filed, and the filing fee paid, within 20 days of the date that the attorney is notified in writing, the attorney shall be barred from further participation, and the matter will proceed uncontested."). Plaintiff attached and incorporated in her appeal before the DRB, her correspondence with the OAE, in which she sought to have her proceeding reopened on the grounds that she had not received the notice required under the Court's rules, and in which the Director of the OAE informed Plaintiff that service by mail had been attempted three times, all of which mailings had been returned to the OAE as undeliverable. Plaintiff argued before the DRB that the Committee was not permitted to make service solely by letter because doing so "result[ed] in barring an attorney from further participation" in the proceedings. R. 1:20A-3(b)(2). After reviewing Plaintiff's submissions, the DRB nevertheless denied her challenge to the adequacy of notice under R. 1:20A. [ECF No. 51, p. 139] ("The Disciplinary Review Board has considered your appeal from the decision of the District VI Fee Arbitration Committee. Upon full review and consideration of the matter, the Board did not find sufficient proof of the R. 1:20A-3(c) violation(s) alleged in your appeal. The Board, therefore, has affirmed the Committee's decision and dismissed your appeal."). Plaintiff then sought to appeal the DRB's decision to the New Jersey Supreme Court and was informed by

letter of the Clerk of Court that no petition for review would be considered because, under the Supreme Court's rules, the DRB's judgments on procedural challenges to fee arbitration proceedings are final.[4]

Plaintiff now seeks to raise substantially the same arguments before this Court as grounds for reversing the decisions of the DRB and the Committee. Plaintiff argues that the Committee in her case failed to comply with R. 1:20-7(h), and thereby R. 1:20A-3(b)(2), by attempting to make service upon her by certified mail only, when the rules require personal service or service by both certified *and* regular mail. Plaintiff contends that she was having her mail forwarded from the address listed with the New Jersey Lawyers' Diary and New Jersey Lawyers' Fund for Client Protection to a friend in the United States from whom should would then receive notice of the mail. Because certified mail may not be forwarded, and because no mail may be forwarded to a foreign address, the Committee's certified mailings were returned as undeliverable, and Plaintiff never received notice of the hearing in her case, thus allegedly depriving her of due process. Plaintiff also argues, as in her appeal to the DRB, that letter-only service was not permissible in this case because it "result[ed] in barring an attorney from further participation" in the proceedings. R. 1:20A-3(b)(2). Although Plaintiff adds the additional gloss of further explaining the significance of the certified mailings in this case, her fundamental argument

---

[4] The Clerk of the Supreme Court wrote:

> I am in receipt of your submission dated March 3, 2016, which you have captioned as a "Petition for Review." Your petition seeks review of the decision of the Disciplinary Review Board (DRB) that affirmed a determination of a Fee Arbitration Committee and dismissed your appeal. The rules of Court expressly provide that a decision by the DRB on an appeal from a Fee Arbitration Committee is "final and not subject to further review by the Court, whether by appeal, by leave or in any other manner." R. 1:20-16(d). As a result, this matter is closed and the Court will be taking no action on your submission.

ECF No. 51, p. 161.

remains the same; the letter-only manner of service selected by the Committee was deficient in that it resulted in her not being served with notice of the proceedings, resulting in the deprivation of her right to participate in the fee arbitration hearing. In other words, the harm that Plaintiff claims in this Court, deprivation of her alleged due process right to adequate notice under the United States Constitution, is coextensive with the basis of her appeal to the DRB, and her attempted petition to the New Jersey Supreme Court. Furthermore, in her prayer for relief, Plaintiff explicitly seeks to have this Court overturn the adverse decisions of state government actors, including, the Committee, OAE, DRB, and the Clerk of the Supreme Court. Am. Compl., ¶ 6. Because the DRB has already considered and rejected Plaintiff's procedural challenge to her fee arbitration proceeding concerning the adequacy of notice, and, under New Jersey Supreme Court Rule 1:20-16(d), the decisions of the DRB are final on such matters, this case is effectively an appeal of the DRB's ruling. The *Rooker-Feldman* doctrine does not permit the federal courts to sit in judgment of final state rulings, and so this Court lacks jurisdiction over the subject matter of Plaintiff's Amended Complaint.[5]

---

[5] Although not raised by the parties, the Court notes that "the *Rooker–Feldman* doctrine only applies to state judicial proceedings, not administrative or legislative proceedings." *Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 342 F.3d 242, 257 (3d Cir. 2003). *See also Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 644 n. 3 (2002) ("The [*Rooker–Feldman*] doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency."). There is no state "court" judgment in this matter; the relevant documents in the record now before the Court, reflecting decisions adverse to the Plaintiff, are: (i) an August 6, 2015 e-mail to Plaintiff from Barbara Cristofaro on behalf of Defendant Charles Centinaro, denying Plaintiff's request to reopen her fee arbitration hearing due to inadequate notice, [ECF No. 33, p. 27]; (ii) the February 2, 2016 letter decision of the DRB, finding insufficient proof of a procedural process violation after considering Plaintiff's allegations of deficient notice, affirming the Committee's decision, and dismissing Plaintiff's appeal, [ECF No. 51, p. 139]; and (iii) the April 4, 2016 letter of Mark Neary, Clerk of the Supreme Court, rejecting Plaintiff's Petition for Review of the DRB's decision, and closing the matter, [ECF No. 51, p. 161]. The Court finds, however, that the final decision of the DRB on Plaintiff's procedural due process challenge was reached as the result of a judicial proceeding.

In her supplementary submission, Plaintiff argues that the *Rooker-Feldman* doctrine should not apply in this case because she has yet to have the opportunity to bring before a state or federal court of law or equity her collateral attack on the Committee's decision based upon the alleged constitutional inadequacy of notice. *Cf. Grey v. New Jersey*, 91 F. App'x 747, 751 (3d Cir. 2003) (affirming the district court's finding that plaintiff's constitutional due process claims were barred by *Rooker–Feldman*, where plaintiff had previously brought an action challenging

---

The Supreme Court has opined at length on the distinction between judicial and administrative or ministerial proceedings. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476–79 (1983) (collecting and discussing cases). Under Supreme Court precedents, "[t]he proper characterization of an agency's actions 'depends not upon the character of the body but upon the character of the proceedings.'" *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 370 (1989) ("*NOPSI*") (quoting *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 226–27 (1908)). Judicial proceedings are "designed to adjudicate disputed facts in particular cases." *United States v. Florida E. Coast R.R.,* 410 U.S. 224, 245 (1973). "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end." *NOPSI,* 491 U.S. at 370–71 (quoting *Prentis,* 211 U.S. at 226).

The fee arbitration committees and the DRB are arms and agents of the New Jersey Supreme Court and have been delegated a portion of that Court's equitable powers. *Application of LiVolsi*, 85 N.J. 576, 597 n. 22 (1981) (citing *In re Logan*, 70 N.J. 222, 225, 358 A.2d 787 (1976)) ("The inappropriateness of having Committee or Disciplinary Review Board decisions appealed to the Superior Court is further demonstrated by the fact that this Court has labeled these committees 'agents' of the Supreme Court."); *id.* at 590 n. 13 (explaining that the New Jersey Supreme Court vested the fee arbitration committees with authority previously belonging to the New Jersey state courts of equity). Together, as part of the FAS, these bodies clearly are designed to adjudicate disputed facts in particular cases and investigate, declare, and enforce liabilities as they stand on present or past facts and under extant laws. Moreover, New Jersey Court Rules provide in FAS proceedings the kind of procedural due process protections characteristic of judicial proceedings, including (i) the initiation of fee arbitration proceedings through an initial pleading, R. 1:20A-3(a)(1); (ii) the right to a hearing with the opportunity for all parties to be present and participate, to compel the attendance of witnesses to be sworn under oath, and to compel the production of documents through the use of subpoenas, R. 1:20A-3(b)(1), (b)(4); (iii) notice to the respondent and the opportunity to file responsive pleadings, R. 1:20A-3(b)(2); (iv) impleader, R. 1:20A-3(b)(3); and (v) appeal of process deprivations, R. 1:20A-3(c)-(d). Proceedings before the Committee and DRB therefore meet the criteria for judicial proceedings under federal law. *See, e.g.*, *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432–34 (1982) (finding, for similar reasons that New Jersey DRB ethics committee administrative proceedings are judicial in nature).

the DRB's determination in New Jersey Superior Court, which was dismissed under the court's rules for lack of jurisdiction over the DRB's non-reviewable determination). Plaintiff, however, has already availed herself of the opportunity to raise such a challenge in her appeal before the DRB, such that any proceeding in this Court would not so much offer an opportunity to challenge the adequacy of notice before the Committee, but rather to challenge the decision of the DRB that notice was adequate. This is not the type of follow-on court proceeding to vindicate constitutional rights considered by the New Jersey Supreme Court in *LiVolsi* or to which Plaintiff would otherwise be entitled under federal law. In *LiVolsi*, for example, the New Jersey Supreme Court observed that because the structure of the FAS at that time allowed for no appeals of either merits decisions or procedural deprivations, it was obvious that parties who believed their procedural due process rights to have been violated by the committee proceedings retained the right to seek redress in the courts. *LiVolsi*, 85 N.J. at 591 n. 15. At the same time, however, the *LiVolsi* Court laid the groundwork for a restructuring of the FAS, whereby jurisdiction over such procedural challenges would be vested in the DRB. *Id.* at 603-04. Subsequent rule changes implemented that restructuring such that aggrieved parties still have an opportunity for collateral attack *on committee proceedings* on the basis of procedural due process violations, but that opportunity is now before the DRB, which the New Jersey Supreme Court has vested with final decision-making authority in such matters. R. 1:20A-2(a); 1:20A-3(c). The finality of DRB determinations does not mean that the proceedings *before the DRB* are necessarily immune from collateral attack in the courts for deprivations of due process. For example, were a party to seek to collaterally attack the proceedings before the DRB, to contend that her appeal was decided on the basis of racial animus or that she had been denied her due process rights by the Board, the *Rooker-Feldman* doctrine would present no obstacle. Plaintiff, however, is not entitled to a

14

second bite at the apple on the DRB's determination concerning alleged process deprivations *before the Committee*; that decision was final, with no further right of appeal. R. 1:20-16(d).

In sum, Plaintiff pursued an appeal of the Committee's actions in this case with the DRB on the grounds that she was not provided with adequate notice. Indeed, once Plaintiff's client initiated proceedings before the Committee, any appeal from the Committee's decision could be heard only by the DRB. R. 1:20A-2(a). She now seeks an appeal of the DRB's denial of that appeal on the same basis, albeit this time couched in the language of constitutional procedural due process. To accept Plaintiff's position that this Court retains jurisdiction to act as an appellate body for DRB determinations would run directly counter to the letter and the spirit of the *Rooker-Feldman* doctrine. *Williams*, 765 F.3d at 315 ("The *Rooker–Feldman* doctrine strips federal courts of jurisdiction over controversies 'that are essentially appeals from state-court judgments.'" (quoting *Great W. Mining,* 615 F.3d at 165)). To the extent that Plaintiff objects that the removal of the federal forum by that doctrine works an injustice in this matter, her disagreement is fundamentally with the structure of the FAS itself, which provides no state court venue to hear appeals of the proceedings conducted by the Committee and DRB in fee arbitration cases. This Court, however, will not revisit the constitutionality of the FAS itself, which the Third Circuit has already affirmed. *Guralnick v. Supreme Court of New Jersey*, 747 F. Supp. 1109, 1114-118 (D.N.J. 1990), *aff'd*, 961 F.2d 209 (3d Cir. 1992) ("the New Jersey Fee Arbitration System comports with the mandates of due process. There is no fundamental right to have a trial under the fourteenth amendment, and sufficient procedural safeguards exist to ensure that plaintiffs' rights are protected. . . . Consequently, the New Jersey Fee Arbitration System does not . . . infringe upon the rights granted to the plaintiffs under the fourteenth, seventh and thirteenth amendments and article 1, section 1, of the United States Constitution."). The relief

requested in Plaintiff's Amended Complaint may not be granted without a finding by this Court that the DRB erred in concluding that the notice provided to Plaintiff of her fee arbitration hearing was statutorily adequate. That is precisely what *Rooker-Feldman* does not allow. This Court therefore cannot exercise jurisdiction over Plaintiff's claims.

IV. CONCLUSION

Accordingly, for the foregoing reasons, the Court, evaluating its subject matter jurisdiction, *sua sponte*, finds that consideration of Plaintiff's claims in the Amended Complaint is barred by the *Rooker-Feldman* doctrine. This matter is therefore dismissed for lack of subject matter jurisdiction. An appropriate Order will follow.

Dated:      2/23/2018                              /s/ Freda L. Wolfson
                                                   The Honorable Freda L. Wolfson
                                                   United States District Judge